**IN THE UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF ARKANSAS**
**JONESBORO DIVISION**

PRENTIS RUPERT                                                                                          PLAINTIFF

v.                                          3:17cv00061-DPM-JJV

MARTY BOYD, Sheriff, Craighead
County Sheriff Department; *et al.*                                                               DEFENDANTS

## AMENDED AND SUBSTITUTED

## PROPOSED FINDINGS AND RECOMMENDATIONS

## INSTRUCTIONS

The following recommended disposition has been sent to United States District Judge D.P. Marshall Jr. Any party may serve and file written objections to this recommendation. Objections should be specific and should include the factual or legal basis for the objection. If the objection is to a factual finding, specifically identify that finding and the evidence that supports your objection. An original and one copy of your objections must be received in the office of the United States District Court Clerk no later than fourteen (14) days from the date of the findings and recommendations. The copy will be furnished to the opposing party. Failure to file timely objections may result in waiver of the right to appeal questions of fact.

If you are objecting to the recommendation and also desire to submit new, different, or additional evidence, and to have a hearing for this purpose before the District Judge, you must, at the same time that you file your written objections, include the following:

1.      Why the record made before the Magistrate Judge is inadequate.

2.      Why the evidence proffered at the hearing (if such a hearing is granted) was not offered at the hearing before the Magistrate Judge.

3. The details of any testimony desired to be introduced at the new hearing in the form of an offer of proof, and a copy, or the original, of any documentary or other non-testimonial evidence desired to be introduced at the new hearing.

From this submission, the District Judge will determine the necessity for an additional evidentiary hearing. Mail your objections and "Statement of Necessity" to:

> Clerk, United States District Court
> Eastern District of Arkansas
> 600 West Capitol Avenue, Suite A149
> Little Rock, AR 72201-3325

## **DISPOSITION**

### I. INTRODUCTION

Prentis Rupert ("Plaintiff"), formerly incarcerated at the Craighead County Detention Center, filed this action *pro se* pursuant to 42 U.S.C. § 1983. (Doc. No. 2.) He alleges he was denied medical care for hepatitis C and dental care for a toothache while held at the Craighead County Detention Center. (*Id*. at 4-5.) Plaintiff seeks monetary damages. (*Id*. at 6.) Defendant Bowers has filed a Motion for Summary Judgment raising the defense of qualified immunity. (Doc. No. 46.) Defendants Bentley, Black, Hogan and Motts[1] have filed a separate Motion for Summary Judgment, stating "no medical provider ever deliberately disregarded any serious medical need of Mr. Rupert to his detriment." (Doc. No. 53 at 1, 57, 58.) Plaintiff has not responded and the time for doing so has passed. Therefore, this matter is ripe for a decision.

After careful review and for the following reasons, I find both Motions for Summary Judgment should be GRANTED. Plaintiff's claims fail to rise to the level of deliberate indifference and, therefore, this matter should be dismissed.

---

[1] On February 21, 2018, I granted Defendant Motts's Motion to Amend or Supplement Motion for Summary Judgment. (Doc. Nos. 57, 58.) She was inadvertently omitted as a Movant in the original Motion but is now a party to the instant Motion for Summary Judgment.

## II.    SUMMARY JUDGMENT STANDARD

Under Rule 56 of the Federal Rules of Civil Procedure, summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A party asserting that a fact cannot be or is genuinely disputed must support the assertion by citing to particular parts of materials in the record, "including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials[.]" Fed. R. Civ. P. 56(c)(1)(A).

When ruling on a motion for summary judgment, the court must view the evidence in a light most favorable to the nonmoving party. *Naucke v. City of Park Hills*, 284 F.3d 923, 927 (8th Cir. 2002). The nonmoving party may not rely on allegations or denials, but must demonstrate the existence of specific facts that create a genuine issue for trial. *Mann v. Yarnell*, 497 F.3d 822, 825 (8th Cir. 2007). The nonmoving party's allegations must be supported by sufficient probative evidence that would permit a finding in his favor on more than mere speculation, conjecture, or fantasy. *Id.* (citations omitted). A dispute is genuine if the evidence is such that it could cause a reasonable jury to return a verdict for either party; a fact is material if its resolution affects the outcome of the case. *Othman v. City of Country Club Hills*, 671 F.3d 672, 675 (8th Cir. 2012). Disputes that are not genuine or that are about facts that are not material will not preclude summary judgment. *Sitzes v. City of West Memphis, Ark.*, 606 F.3d 461, 465 (8th Cir. 2010).

## III.    PLAINTIFF'S COMPLAINT

Plaintiff was a detainee in the Craighead County Detention Center on January 12, 2017, after police arrested him for possession of a controlled substance. Ten days later, on January 22, 2017, Plaintiff notified jailers "he was having tooth pains." (Doc. No. 2 at 4.) A few days later he began "complaining of shortness of breath, muscle [aches], back pains etc." (*Id.*) Plaintiff says

3

he suffers from hepatitis C and requested treatment and medication for this illness and for tooth pain and other ailments. (*Id.*) Although he was seen by Dr. Bentley, he says he was never provided necessary treatment because the cost of the requested treatment was "very high." (*Id.*) Mr. Rupert says he "has never been giv[en] the treatment he requested for his tooth pain or his Hep. C. treatment that he requested." (*Id.* at 5.)

## IV. ANALYSIS

### A. Official Capacity Claims

Plaintiff has sued Defendants in both their personal and official capacities. (Doc. No. 2 at 2.) Official capacity suits "generally represent only another way of pleading an action against an entity of which an officer is an agent." *Kentucky v. Graham*, 473 U.S. 159, 165 (1985) (quoting *Monell v. Dep't of Social Servs. of City of New York*, 436 U.S. 658, 690, n. 55 (1978)). As long as the government entity receives notice and an opportunity to respond, an official capacity suit is, in all respects other than name, to be treated as a suit against the entity. *Id.* at 166. Thus, Plaintiff's official capacity claims against Defendants are to be treated as claims against Craighead County. Section 1983 liability against municipalities and other local government units is limited:

> Local governing bodies, therefore, can be sued directly under § 1983 for monetary, declaratory, or injunctive relief where . . . the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers. Moreover, although the touchstone of the § 1983 action against a government body is an allegation that official policy is responsible for a deprivation of rights protected by the Constitution, local governments, like every other § 1983 "person," by the very terms of the statute, may be sued for constitutional deprivations visited pursuant to governmental "custom" even though such a custom has not received formal approval through the body's official decisionmaking channels.

*Monell*, 436 U.S. at 690-91. A municipality cannot be held liable under § 1983 on a *respondeat superior* theory. *Id.* at 691. *See also Johnson v. Outboard Marine Corp.*, 172 F.3d 531, 535-36 (8th Cir. 1999).

4

Plaintiff has not identified any official policy or unofficial custom of Craighead County that caused or contributed to his alleged injury. Because Plaintiff makes no allegation that Defendants were implementing an unconstitutional policy or custom, his official capacity claims against them must be dismissed.

### B. Personal Capacity Claims

Defendant Bowers, as a government official, contends he is entitled to qualified immunity on Plaintiff's personal capacity claims. (Doc. No. 47 at 5-8.) Defendants Bentley, Black, Hogan, and Motts are not government officials so qualified immunity is not available to them. They argue Plaintiff's claims should be dismissed because Mr. Rupert has failed to show they were deliberately indifferent to his serious medical needs. (Doc. No. 53.) For both Motions, the critical analysis turns on whether or not a constitutional violation has occurred. For the reasons stated below, I find no constitutional violation by any of these Defendants. So Defendant Bowers is entitled to dismissal based on qualified immunity, and Defendants Bentley, Black, Hogan and Motts are entitled to dismissal because Plaintiff's claims fail to amount to a constitutional violation in accordance with 42 U.S.C. § 1983.

Qualified immunity protects government officials who acted in an objectively reasonable manner and shields an official from liability when his or her conduct does not violate "clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). Qualified immunity is a question of law, not a question of fact. *McClendon v. Story Cty. Sheriff's Office*, 403 F.3d 510, 515 (8th Cir. 2005). Thus, issues concerning qualified immunity are appropriately resolved on summary judgment. *See Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985) (the privilege is "an immunity from suit rather than a mere defense to liability; and like an absolute immunity, it is effectively lost if a case is erroneously permitted to go to trial").

To determine whether a defendant is entitled to qualified immunity, courts consider two questions: (1) whether the facts alleged or shown, construed in the light most favorable to the plaintiff, establish a violation of a constitutional or statutory right; and (2) whether that right was so clearly established that a reasonable official would have known that his or her actions were unlawful. *Pearson v. Callahan*, 555 U.S. 223, 232 (2009); *see also Saucier v. Katz*, 533 U.S. 194, 201 (2001).[2] Defendant Bowers is entitled to qualified immunity only if no reasonable fact finder could answer both questions in the affirmative. *Nelson v. Corr. Med. Servs.*, 583 F.3d 522, 528 (8th Cir. 2009). Upon review of the record in this case, I find the facts shown, construed in the light most favorable to Plaintiff, do not establish a violation of his constitutional rights.

The Eighth Amendment prohibits the infliction of "cruel and unusual punishments" on prisoners.[3] *Wilson v. Seiter*, 501 U.S. 294, 296-97 (1991). An inmate advancing an Eighth Amendment claim based on medical care must, at a minimum, allege "deliberate indifference" to his "serious" medical needs. *Id.* at 297. Deliberate indifference to the serious medical needs of a prisoner constitutes the unnecessary and wanton infliction of pain proscribed by the Eighth Amendment. *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). Deliberate indifference may be manifested by prison doctors in their response to the prisoner's needs or by prison guards in intentionally denying or delaying access to medical care or intentionally interfering with treatment once prescribed. *Id*. at 104-05. However, an inadvertent or negligent failure to provide adequate

---

[2] Courts are "permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." *Nelson v. Corr. Med. Servs.*, 583 F.3d 522, 528 (8th Cir. 2009) (quoting *Pearson*, 555 U.S. at 236).

[3] Because Plaintiff was a pretrial detainee at the time of the alleged constitutional violations (Doc. No. 2 at 3), his claims are properly analyzed under the Due Process Clause of the Fourteenth Amendment rather than the Eighth Amendment. *Davis v. Hall*, 992 F.2d 151, 152 (8th Cir. 1993) (per curiam). Nonetheless, the same "deliberate indifference" standard has been held to apply. *Id*. at 152-53 (citing *Johnson-El v. Schoemehl*, 878 F.2d 1043 (8th Cir. 1989)).

medical care cannot be said to constitute "an unnecessary and wanton infliction of pain." *Id*. at 105.

Defendants all contend they were not deliberately indifferent to Plaintiff's serious medical needs. (Doc. Nos. 47 at 8-9, 54 at 7-13.) The evidence submitted in support of their Motions demonstrates they were not.

Upon being arrested, Craighead County Sheriff's Department officials performed a medical screening of Plaintiff. (Doc. No. 48-3 at 3.[4]) Plaintiff only complained of "lower back pain." (*Id.*) His Complaint says he began having medical issues on January 22, 2017,[5] and records reveal he was seen by a nurse that very day. (*Id.* at 4-5.) The nurse noted his "#18" tooth was bleeding and painful, so she provided Tylenol and stated she would notify the doctor. (*Id.* at 8.) On January 26, 2017, Plaintiff was seen for "shortness of breath when he exerts himself," but his lungs were clear and the examination was normal. (*Id.* at 9.) Again he was provided medication and the nurse stated she would notify the doctor. On February 6, 2017, treatment records show Plaintiff complained of his hepatitis C. (*Id.* at 10.) The nurse's assessment was "generalized pain and discomfort" and her notes indicate Plaintiff would be seen "Wednesday during doctor call." (*Id.*) On February 8, 2017, Plaintiff was seen as indicated. (*Id.* at 11.) Treatment notes reveal that the focus was on treating a wound on Plaintiff's elbow. (Doc. No. 48-3 at 11-12.) On February 15, 2017, Plaintiff was again seen for his tooth ache. Notes report Mr. Rupert's tooth was "hurting" and his "gums [were] slightly red and swollen," but "no abscess [was] noted." (*Id*. at 13.) Again, Plaintiff was provided Tylenol and the doctor was notified. (*Id.*) On February 18, 2017, treatment

---

[4] Defendants Bentley, Black, Hogan, and Motts submit the same treatment records and sick call requests as does Defendant Bowers. (Doc. No. 53-1.)

[5] Although the allegations in Plaintiff's Complaint begin on January 22, 2017, (Doc. No. 2 at 4), his first sick call request form is dated January 20, 2017, whereby he complained of an infection in his elbow. (Doc. No. 48-3 at 55.)

notes reveal Mr. Rupert had lost a filling but there was "no signs of swelling, redness, or abscess." (*Id.* at 14.)  Mr. Rupert was next seen on February 24, 2017, for boils on his buttocks. (*Id.* at 15.) The nurse cleaned the boils with betadine and provided him clindamycin. (*Id.*)  On March 11, 2017, Mr. Rupert was again seen for tooth pain. (*Id.* at 16.)  Treatment notes report, "No redness and swelling, tooth plaque buildup on both teeth."  Plaintiff was given Tylenol for the pain. (*Id.*) On March 16, 2017, Plaintiff was seen and treated for a rash on his feet. (*Id.* at 18.)  He was seen and treated next on March 18, 2017, for a fractured toe. (*Id.* at 19-21.)  He received follow up care at St. Bernards Orthopedic Associates on March 27, 2017. (*Id.* at 22-24.)  Treatment notes reveal Plaintiff was diagnosed with a "Nondisplaced fracture of proximal phalanx of right great toe, initial encounter for closed fracture" and he would "be sore for about 6 weeks." (*Id.* at 23.)  He received follow up care for his toe on April 3, 2017, by the jail nurse. (*Id.* at 25.)  On April 21, 2017, he was treated for another boil and tooth pain. (*Id.* at 26.)  Then, on May 7, 2017, Mr. Rupert was "brought to [the jail medical] clinic for evaluation following a physical altercation." (*Id.* at 27.) He suffered a laceration to his left ear and taken to the St. Bernards Medical Center emergency room for stitches. (*Id.* at 27-36.)  The next day he received follow up care at the jail. (*Id.* at 37.) On May 14, 2017, Mr. Rupert's stitches were removed. (*Id.* at 38.)  He later was treated at the jail medical clinic on May 24, 2017, for headaches and bloody stools. (*Id.* at 39.)  On May 31, 2017, medical personnel treated Mr. Rupert for a headache he had been experiencing for ten days. (*Id.* at 40.)  On June 15, 2017, Mr. Rupert was seen for boils, headaches and tooth pain. (*Id.* at 41.) I note that Plaintiff was generally seen within one day of submitting sick call requests. (*Id.* at 55-76.)

 Defendants Bentley, Black, Hogan, and Motts also have provided the Affidavit of Michael Mitcheff, D.O.  (Doc. No. 53-3.)  Dr. Mitcheff states he has "been working in correctional medicine for approximately 20 years and [has] received significant education, training, and

experience in treating patients in correctional settings, including those with Hepatitis C." (Doc. No. 53-3 at 1.) With regard to hepatitis treatment, Dr. Mitcheff further says "for the medications to be effective, the treatment regimen must be followed very strictly. A patient who fails to strictly comply with the treatment regimen or, whose treatment is interrupted, will likely not be cured. Further, and critically, a patient who begins, but fails to complete a treatment regimen with direct acting antivirals, will be less likely to be cured in future attempts at treatment." (*Id.* at 2.) So before treatment begins, assurances must be made that the patient will complete the entire treatment regimen. (*Id.*) Therefore, Dr. Mitcheff says:

> In the County Jail setting, practitioners have no ability to predict how long a particular detainee will be in the facility. Pre-trial detainees are, in most cases, in the facilities only briefly while they await trial. They are then either released from custody or sent to a more permanent placement. Some may be in the facility longer if their trial is continued or delayed, but Jail practitioners cannot predict those circumstances. As such, Jail practitioners cannot guarantee continuity of care for patients if they are released or sent to another facility in the middle of treatment. As previously noted, if a treatment regimen is interrupted, it could have serious detrimental impacts on the patient's health.

(*Id.* at 3.)

Therefore, Dr. Mitcheff concludes, "Mr. Rupert's relatively short term of incarceration at the Craighead County Detention Center did not make him a candidate for antiviral treatment because an uncertain incarceration of six months is not adequate to insure sufficient continuity of care." (*Id.* at 4.) So, "[I]t was, and is, in [Mr. Rupert's] best interest to have treatment deferred until such time as continuity of care can be assured." (*Id.*)

Based on the above, I find Defendants did not act with deliberate indifference to Plaintiff's serious medical needs. *Estelle v. Gamble*, 429 U.S. 97, 104 (1976) (deliberate indifference includes intentional interference with prescribed treatment; inadvertent or negligent failure to provide adequate medical care cannot be said to constitute "unnecessary and wanton infliction of pain"). Medical personnel quickly responded to all of Plaintiff's requests and provided treatment

9

during each of Mr. Rupert's numerous clinic visits. Jail personnel also sent Mr. Rupert to St. Bernards Hospital when it was necessary.

"Deliberate indifference may include intentionally denying or delaying access to medical care, or intentionally interfering with treatment or medication that has been prescribed." *Vaughan v. Lacey*, 49 F.3d at 1346. However, "[a] showing of deliberate indifference is greater than gross negligence and requires more than mere disagreement with treatment decisions." *Gibson v. Weber*, 433 F.3d at 646. There is no deliberate indifference here.

The United States Court of Appeals for the Eighth Circuit has explained:

> Prison doctors and guards violate the Eighth Amendment when they act with 'deliberate indifference to [an inmate's] serious medical needs.' 'Deliberate indifference' entails a level of culpability equal to the criminal law definition of recklessness, that is, a prison official 'must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.' Thus, a complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. Likewise, an inmate's 'mere disagreement with the course of his medical treatment' fails to state a claim of deliberate indifference.

*Bender v. Regier*, 385 F.3d 1133, 1137 (8th Cir. 2004) (citations omitted).

And an allegation of negligence in diagnosing or treating a medical condition also does not constitute a claim of deliberate indifference. *Estelle v. Gamble*, 429 U.S. 97, 105-06 (1976). Rather, the "prisoner must show more than negligence, more even than gross negligence, and mere disagreement with treatment decisions does not rise to the level of a constitutional violation." *Estate of Rosenberg v. Crandell*, 56 F.3d 35, 37 (8th Cir. 1995). *See also Smith v. Marcantonio*, 910 F.2d at 502 (holding that a mere disagreement with a course of medical treatment is insufficient to state a claim for relief under the Eighth Amendment).

In addition, an inmate who complains that a delay in medical treatment constitutes a constitutional violation must provide "verifying medical evidence" in the record to establish the

10

detrimental effect of the delay, in order to succeed on his claim. *Beyerbach v. Sears*, 49 F.3d 1324, 1326 (8th Cir. 1995) (overruled in part on other grounds) (quoting *Hill v. Dekalb Regional Youth Detention Ctr.*, 40 F.3d 1176, 1188 (11th Cir. 1994)). Plaintiff provides no proof whatsoever that he suffered any detrimental effects for any delay in treatment.

And while Mr. Rupert believes he was unfairly denied hepatitis treatment because the medications were too expensive, the Affidavit of Dr. Mitcheff says otherwise. Evidence shows it was actually to Mr. Rupert's benefit that he not receive the treatment while temporarily in custody for an unknown period of time. "In the face of medical records indicating that treatment was provided and physician affidavits indicating the care provided was adequate, an inmate cannot create a question of fact by merely stating that [he] did not feel [he] received adequate treatment." *Dulany, supra,* 132 F.3d at 1240.

Finally, I note Plaintiff's claim against Defendant Bowers is based only on his position as a supervisor. Plaintiff's Complaint states nothing more than Defendant Bowers enforces the policy at the Detention Center. (Doc. No. 2 at 5.) In the § 1983 context, supervisors cannot be held liable for the misconduct of subordinates based only on the employment relationship. *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009). A prison supervisor can be held liable if he fails to properly supervise his subordinates by tacitly authorizing a constitutional violation or by failing to take corrective action in response to a violation. *Boyd v. Knox*, 47 F.3d 966, 968 (8th Cir. 1995). However, to state a failure to supervise claim, a plaintiff must show the supervisor received notice of a pattern of unconstitutional acts committed by subordinates, demonstrated deliberate indifference to or tacit authorization of the offensive acts, failed to take sufficient remedial action, and that such failure proximately caused injury to the plaintiff. *Parrish v. Ball*, 594 F.3d 993, 1002 (8th Cir. 2010). Here, Plaintiff has failed to demonstrate a pattern of unconstitutional acts occurred, much less that Defendant Bowers received notice of it and was deliberately indifferent to it.

For these reasons, Plaintiff has failed to show any of these Defendants were deliberately indifferent to a serious medical need by denying him treatment or medication. Because the facts alleged or shown, construed in the light most favorable to Plaintiff, do not establish a violation of a constitutional or statutory right, Plaintiff's personal capacity claims against Defendants should be dismissed.

## V. CONCLUSION

IT IS, THEREFORE, RECOMMENDED that:

1. Defendant Bowers's Motion for Summary Judgment (Doc. No. 46) be GRANTED.

2. Defendants Bentley, Black, Hogan, and Motts's Motion for Summary Judgment (Doc. No.53) be GRANTED.

3. Plaintiff's cause of action be DISMISSED with prejudice.

4. Pursuant to 28 U.S.C. § 1915(a)(3), an *in forma pauperis* appeal from this Order and an accompanying Judgment would not be taken in good faith.

DATED this 22nd day of February, 2018.

_____
JOE J. VOLPE
UNITED STATES MAGISTRATE JUDGE